UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C.F. DOE, by his Next Friend,
MOTHER OF C.F. DOE,

        Plaintiff,

                          Civil Case No. 21-11136

v.                       Honorable Linda V. Parker

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT and
SAMMIE EDWARDS,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT
PREJUDICE IN PART DEFENDANT DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT'S MOTION FOR JUDGMENT ON THE
PLEADINGS (ECF NO. 15)**

This lawsuit arises from a May 2, 2018 incident at a school within the

Detroit Public Schools Community District ("DPSCD"), involving then-second

grade student C.F. Doe and former DPSCD employee Defendant Sammie

Edwards.  At the time of the incident, Edwards was employed as an educator and

guidance counselor.  In a Complaint filed in state court and removed to federal

court on May 18, 2021, C.F. Doe, through his mother, alleges the following claims:

    I.       Substantive Due Process Violation of Constitutional Rights
               Under the Fourteenth Amendment of the United States
               Constitution Pursuant to 42 U.S.C. § 1983–Defendant
               Edwards;

1

II.     Municipal/Supervisory Liability Pursuant to 42 U.S.C. § 1983–
        Defendant DPSCD;

III.    Gross Negligence–Defendant Edwards;

IV.     Assault–Defendant Edwards;

V.      Intentional Infliction of Emotional Distress–Defendant
        Edwards;

VI.     Violation of the Persons with Disabilities Civil Rights Act,
        [Mich. Comp. Laws §] 37.1001, et seq.–Defendant DPSCD
        and Edwards;

(Compl., ECF No. 1 (capitalization removed).)

The matter is presently before the Court on DPSCD's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), filed August 26, 2021.  (ECF No. 15.)  The motion is fully briefed.  (ECF Nos. 17, 18.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.      Standard of Review

A Rule 12(c) motion is subject to the same standard of review as a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may take judicial notice only "'of facts which are not subject to reasonable dispute.'" *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

Under certain circumstances, video evidence may be considered when deciding a motion to dismiss. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386-87 (6th Cir. 2017) (holding that a court may consider a video when deciding a motion to dismiss where it is referenced in the plaintiff's complaint, captures the incident, and would not distort the court's view of the events). DPSCD has submitted a

video recording of the incident in support of its motion.  (Notice of Filing & Photo of Video, ECF Nos. 24, 25.)  The recording provides a clear picture of the events at issue.  In the Complaint, Plaintiff refers to a video of the "entire incident" recorded on a student's cell phone.[1]  (Compl. ¶¶ 43, 44, ECF No. 1 at Pg ID 15.)  The Court is therefore considering the video evidence when deciding DPSCD's motion.

## II.    Factual Background

### A.    Edwards

Around 1999, Edwards began working as a teacher for DPSCD (formerly "Detroit Public Schools").  (Compl. ¶ 10, ECF No. 1 at Pg ID 11.)  In January 2007, DPSCD suspended Edwards for violating a work rule prohibiting "fraternizing with students, which includes but is not limited to touching, excessive conversation, or other non-job-related personal contact with students" and "unprofessional conduct."  (*Id*. ¶ 12.)  Edwards was suspended again in November 2014 for violating work rules prohibiting employees from "interfer[ing] with any other employee's performance of duties" and "commit[ing] an act which might endanger the safety or lives of others," threats, and unprofessional conduct.  (*Id*. ¶ 14.)  In April 2016, DPSCD again suspended Edwards "for violating different

---

[1]  In fact, the video begins only after some of the facts alleged in the Complaint occurred.  However, the uncaptured facts are not in dispute.

5

work rules, including conducting herself in an unprofessional manner." (*Id*. ¶ 16, Pg ID 12.)

During the 2016-2017 and 2017-2018 academic years, DPSCD placed Edwards at Brewer Academy. (*Id*. ¶ 17.) Edwards was a guidance counselor, but was assigned to cover classrooms with teacher vacancies. (*Id*. ¶¶ 17-18.) In January 2018, Edwards was again suspended for violating a work rule related to performing all work assigned by an administrator properly and unprofessional conduct and insubordination. (*Id*. ¶ 20.)

In addition to Edwards' workplace violations within DPSCD, she has a criminal history. (*Id*. ¶ 20.) In 2003, Edwards was "charged with one count of child abuse – third degree, a felony, and one count of child abuse – fo[u]rth degree, a misdemeanor, in connection with an incident that occurred on or around December 30, 2003, while . . . employed by the district." (*Id*. ¶ 23.) On January 20, 2004, Edwards pled guilty to one or both of these charges, was placed on probation, and received a delayed sentence under Michigan Compiled Laws § 771.1. (*Id*. ¶ 24, Pg ID 13.) During her one-year period of probation, Edwards remained a DPSCD employee. (*Id*. ¶ 25.)

## B. C.F. Doe

At the time of the relevant incident, C.F. Doe was a seven-year-old, second grade student at Brewer Academy. (*Id*. ¶ 29.) Since at least 2016, C.F. Doe had an

6

Individualized Education Program due to diagnosed speech and language impediments and intellectual disabilities. (*Id.* ¶ 26.) C.F. Doe was known to have "difficulties with, among others, attention, behavior, following directions, hyperactivity, emotional regulation, aggression, expression, learning and comprehension, interacting with others, and socialization." (*Id.* ¶ 25.)

### C.    The Incident

On May 2, 2018, C.F. Doe was sent to see Edwards in her capacity as a guidance counselor because he was exhibiting behavioral problems. (*Id.* ¶ 28.) That day, Edwards was supervising a seventh-grade classroom. (*Id.* ¶ 30, Pg ID 14.) Therefore, C.F. Doe was sent to that classroom instead of Edwards' office. (*Id.* ¶ 31.)

While in the seventh-grade classroom, an older student made threatening comments to C.F. Doe. (*Id.* ¶ 33.) In response, C.F. Doe said he wanted to fight the older student. (*Id.*) Edwards then began ridiculing and embarrassing C.F. Doe in front of the class. (*Id.* ¶ 34.) Waving a ruler as she spoke, Edwards brought up Don King, a notorious boxing match promotor, and told the students she was "pissed off" that they did not know who Don King is. (*Id.* ¶ 35.) Edwards can then be heard saying "Muhammed Ali" and that Don King "arranged those fights", and then she told the class that "right now she is Don King." (*Id.* ¶ 38.) She then told C.F. Doe to "stand up." (*Id.*)

In response to this "instigation and provocation," numerous seventh-grade students told C.F. Doe to "stand up." (*Id.* ¶ 39, Pg ID 15.) The student next to C.F. Doe nudged or without great force pushed him forward. (Video at 00:46.) At this point, Edwards reached into her purse and stated that she would "put money on the winner." (*Id.* at 00:50; Compl. ¶ 40, ECF No. 1 at Pg ID 15.) Another student began slapping an open area on the ground in the classroom, saying "right here." (Video at 00:56; Compl. *Id.* ¶ 39, Pg ID 15.) As C.F. Doe walks toward the open area, the seventh-grade students laughed and jeered at C.F. Doe, who began to cry. (Video at 1:03, Compl. ¶ 42, Pg ID 15.) In response, the students' laughter and shouting intensified and some began clapping. (Video at 1:07-:16.)

After discovering that one of the students had recorded the incident, Edwards took the cellphone and three of the students to Angela McNeil-Chisholm, the Academic Engagement Administrator at Brewer Academy. (Compl. ¶¶ 44-45, ECF No. 1 at Pg ID 15.)

On September 4, 2018, DPSCD charged Edwards in connection with the May 2 incident with unprofessional conduct and violating a work rule prohibiting employees from "commit[ting] an act which might endanger the safety of [sic] lives of others." (*Id.* ¶ 46.) On September 11, 2018, DPSCD terminated Edwards' employment. (*Id.* ¶ 47.) In connection with the incident, the Wayne County Prosecutor charged Edwards with child abuse in the fourth degree on or about

January 13, 2020.  (*Id.* ¶ 48, Pg ID 16.)  As a result of the incident, C.F. Doe has

"suffered from severe psychological and emotional injuries, and severe impairment

to his academic and social development."  (*Id.* ¶ 49.)

## III.   DPSCD's Motion and C.F. Doe's Response

DPSCD seeks dismissal of Counts I and II of the Complaint, arguing that the

facts do not establish the violation of C.F. Doe's substantive due process rights

and, even if they do, the school district is not liable for any constitutional violation.

DPSCD next argues that it cannot be liable for the intentional torts asserted against

Edwards in Counts III through V.  Finally, DPSCD maintains that C.F. Doe's

claim under Michigan's Persons with Disabilities Civil Right Act ("PWDCRA")

(Count VI) is pre-empted by the Michigan Mandatory Special Education Act

(MMSEA").

In response to DPSCD's motion, C.F. Doe first requests discovery pursuant

to Federal Rule of Civil Procedure 56(d) and provides an affidavit from counsel

setting forth the discovery needed to fully address the motion.  (Resp. Br. at 8-9,

ECF No. 17 at Pg ID 215-16; Shiener Aff., ECF NO. 17-3.)  Specifically,  counsel

for C.F. Doe seeks: (i) evidence related to Edwards' disciplinary history and

history of misconduct while employed by DPSCD; (ii) evidence related to other

educators' violations of the constitutional rights and/or abuse of C.F. Doe and

other students; (iii) DPSCD's policies and procedures regarding the abuse and/or

mistreatment of students; (iv) evidence related to C.F. Doe's education and

attendance at DPSCD; and (v) evidence of past misconduct by Edwards showing

her "propensity to abuse children and . . . need for additional supervision and

training." (Shiener Aff. ¶ 10, ECF No. 17-3 at Pg ID 267-68.)

C.F. Doe also argues in response to DPSCD's motion that the facts establish

a violation of his substantive due process rights and DPSCD's liability under a

failure to train or supervise theory. C.F. Doe also responds that his PWDCRA

claim is not pre-empted. C.F. Doe does not address DPSCD's arguments with

respect to his tort claims; however, the Complaint clearly reflects that he asserts

those claims only against Edwards.

## IV.   C.F. Doe's Request for Discovery & Counsel's Rule 56(d) Affidavit

Rule 56(d) provides a mechanism for the non-movant to establish that

discovery is needed to oppose a summary judgment motion.[2] Fed. R. Civ. P.

56(d). "[S]ummary judgment [must] be refused where the nonmoving party has

not had the opportunity to discover information that is essential to [its] opposition."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.5 (1986). However, DPSCD has

filed a Rule 12(c) motion for judgment on the pleadings, not a motion for summary

judgment. It has not presented matters outside the pleadings in support of the

motion and, therefore, there is no reason for the Court to treat the motion as one for

---

[2] Rule 56(d) was previously codified at Rule 56(f).

summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  Therefore, the statement in Rule 12(d), which C.F. Doe quotes in his brief, that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion[,]" is not applicable.

A Rule 12(c) motion, like a Rule 12(b)(6) motion to dismiss, tests the legal sufficiency of the complaint while assuming the facts alleged as true.  *See supra*. A plaintiff is not entitled to discovery to file a well-pleaded complaint—that is, a complaint containing sufficient facts to allege a plausible claim.  *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint.  It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").  Further, "there is no general right to discovery upon filing of the complaint.  The very purpose of [Federal Rule of Civil Procedure] 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'"  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)); *see also Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 815 (6th Cir. 2015) (distinguishing case where the district court's summary judgment ruling was reversed because the plaintiff was deprived of his right to conduct adequate discovery under Rule 56, explaining that the "[a]ppellants here fail to show they had any parallel right to

conduct discovery when faced with a motion for judgment on the pleadings."); *Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748-49 (11th Cir. 2013) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins.")).

Moreover, the discovery claimed to be needed by C.F. Doe's counsel relates only to DPSCD's liability for any unconstitutional violation by Edwards.  As will be evident below, the discovery sought would not impact the Court's ruling on that claim.

## V.    Applicable Law & Analysis

### A.    Substantive Due Process

The Due Process Clause of the Fourteenth Amendment protects individuals from state actions that deprive the individual of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  Substantive due process "protects individuals from the arbitrary actions of government employees, but 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 678 (6th Cir. 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The Supreme Court repeatedly has said "that the substantive component of the Due

Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (citing cases); *see also Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)) (holding that the Fourteenth Amendment's Due Process Clause provides public school students with the right "to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience.").

The Supreme Court has explained that whether governmental conduct shocks the conscience depends on the factual circumstances of the case. *Lewis*, 523 U.S. at 851-53.  More specifically, in circumstances where government actors

> are afforded a reasonable opportunity to deliberate various alternatives
> prior to electing a course of action . . . , their actions will be deemed
> conscience-shocking if they were taken with "deliberate indifference"
> towards the plaintiff's federally protected rights.  In contradistinction,
> in a rapidly evolving, fluid, and dangerous predicament which
> precludes the luxury of calm and reflective pre-response
> deliberation . . . public servants' reflexive actions "shock the
> conscience" only if they involved force employed "maliciously and
> sadistically for the very purpose of causing harm" rather than "in a
> good faith effort to maintain or restore discipline."

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53).  " 'Deliberate indifference' is easier to show than 'malicious indifference' when evaluating whether conduct shocks the conscience." *Doe by*

13

*Doe v. Livonia Pub. Schs.*, No. 13-cv-11687, 2018 WL 4953086, at *8 (E.D. Mich. Oct. 12, 2018) (citing *Lewis*, 523 U.S. at 851).

In its motion, DPSCD asserts that, "[t]o establish a substantive due process claim arising in a public school setting . . . the question is 'whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience.'" (Br. in Support of Mot. at 9-10, ECF No. 15 at Pg ID 142-43 (quoting *Webb*, 828 F.2d at 1158 (alteration omitted).) Subsequent to *Webb*, however, the Sixth Circuit adopted a standard for evaluating the use of physical force in a school setting, which asks four guiding questions:

> (1) "Was there a pedagogical justification for the use of force?" (2) "Was the force utilized excessive to meet the legitimate objective in this situation?" (3) "Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?" And (4) "Was there a serious injury?"

*Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016) (quoting *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 173 (3d Cir. 2001)). Yet this case does not involve "the use of force."

C.F. Doe asserts that Edwards violated his substantive due process rights "by physically and emotionally abusing him." (Resp. Br. at 9, ECF No. 17 at Pg ID 216.) In the Complaint, however, C.F. Doe does not allege that Edwards

14

physically touched him, directly or indirectly, or that a fight ensued between C.F. Doe and any student because of Edwards' provocation. The video does not suggest otherwise.

C.F. Doe argues that the Court should apply a "deliberate indifference" standard to assess whether Edwards' conduct was "conscience shocking." (Resp. Br. at 12-13, ECF No. 17 at Pg ID 219-20.) DPSCD does not address C.F. Doe's argument in reply. The Court finds it unnecessary to decide which yard stick to apply, however.

This is because the Sixth Circuit has "never said that purely psychological bullying can suffice to shock the conscience." *Gohl*, 836 F.3d at 680; *see also Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (holding that verbal abuse or harassment did not constitute a violation of a prisoner's Eighth Amendment rights). Notwithstanding the lack of precedent in a comparable setting, the Court is aware that district courts within the Sixth Circuit have held that verbal assaults of students by teachers and other school employees are not conscience-shocking. *See N.P. v. Kenton Cnty. Pub. Schools*, No. 20-142, 2021 WL 4432511, at *3 (E.D. Ky. Sept. 27, 2021) (relying on *Gohl* to dismiss the plaintiff's substantive due process claim based on only alleged harassment and bullying); *Lininger v. St. Marys City Sch. Dist. Bd. of Educ.*, No. 3:16cv2853, 2019 WL 188050, at *10-11 (N.D. Ohio Jan. 14, 2019) (concluding that football coach's regular insults of

player did not support substantive due process claim).  Other Circuit Courts have

expressly held that verbal abuse and harassment do not rise to the "conscience-

shocking" level necessary to support a substantive due process claim.  *See, e.g.,*

*Costello v. Mitchell Pub. Sch. Dist.*, 266 F.3d 916, 921 (8th Cir. 2001) (upholding

the dismissal of a student's substantive due process claim based on a teacher's

verbal harassment, which included calling the student derogatory names and

belittling her on a daily basis in front of her classmates); *Doe v. Gooden*, 214 F.3d

952, 955 (8th Cir. 2000) (finding that teacher's "yelling and screaming at students,

using foul language, telling students that their handwriting 'sucks,' telling students

that 'if you had one eye and half a brain, you could do this,' calling students

'stupid,' and referring to students as 'bimbos,' 'fatso,' and the 'welfare bunch' was

inappropriate and appalling, but did not violate the students' constitutional

rights."); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1257-58 (10th

Cir. 1996) (concluding that teacher repeatedly calling student a prostitute in front

of the class and permitting her classmates to taunt her over a month-and-a-half

period did not amount to a substantive due process violation); *Moore v. Lusks*, 667

F. App'x 592, 594 (8th Cir. 2016) (finding bus driver's bullying of student,

including repeatedly encouraging her to "go home and kill yourself,"

"reprehensible" but insufficient "to promote a claim"; *L.H. Pittston Areas Sch.*

*Dist.*, 666 F. App'x 213, 217 (3d Cir. 2016) (affirming district court's decision

16

granting summary judgment on substantive due process claim based on teacher

telling eighth grade student in front of peers to "shut up"; "It's day 13 and I can't

stand you already"; "I'm not the only teacher who can't stand you"; "You're going

to have the worst year ever"; and "Do you have 'a problem' or 'Tourette's?"); *see*

*also Doe v. Patrick*, 437 F. Supp. 3d 160, 172 (N.D.N.Y. 2020) (finding that a

coach and bus driver's conduct of failing to stop the bus for a student who needed

to use the restroom and teasing and mocking him for needing to stop, resulting in

the student urinating on himself in the bus, "was not so outrageous as to shock the

conscience in the constitutional sense"); *J.D.P by & through Oliver v. Montgomery*

*Cnty. Bd. of Educ.*, No. 2:20-cv-420, 2021 WL 706759, at *4 (M.D. Ala. Feb. 23,

2021) (teacher's verbal harassment of student, which teacher videotaped and

posted on social media, did not rise to a substantive due process violation).

Edwards' conduct toward C.F. Doe was, at best, highly inappropriate and

unprofessional.  Moreover, C.F. Doe is alleged to have suffered "severe

psychological and emotional injuries" as a result.[3]  Experts in both the medical and

---

[3] In *Domingo*, the Sixth Circuit "refused to endorse a 'bright-line rule' requiring evidence of physical, rather than psychological injury."  *Gohl*, 836 F.3d at 679 (citing *Domingo*, 810 F.3d at 415).  The discussion of psychological injury in *Domingo*, however, related to whether a substantive due process claim can survive in the absence of a physical injury resulting from the use of force by a teacher.  In other words, the court was evaluating the fourth prong of the *Domingo/Gottlieb* analysis—i.e., whether "the use of force" resulted in "serious injury" to the plaintiff.  The court did not address whether a substantive due process claim can be based on verbal or psychological harassment, alone.

psychological fields recognize the impact that humiliation and bullying can have on children, particularly those with developmental disabilities.  Unfortunately, however, this Court must conclude based on Sixth Circuit precedent and the decisions of other circuit and district courts that the non-physical harassment and abuse presented here does not give rise to a substantive due process violation.  This Court scoured for cases within this Circuit and in other Circuits compelling a different conclusion and found none.

After having viewed the video, the Court was both stunned and saddened to see a seven-year-old child suffering fear and humiliation as a result of a situation deliberately orchestrated by a school guidance counselor.  Notably, the guidance counselor had a history of discipline and was on probation when the incident occurred.  Nevertheless, as relates to Edwards and C.F. Doe, it is alleged to be a one-time incident, and the video reflects that the incident lasted less than a minute and a half.  *Nuchols v. Berrong*, 268 F. App'x 414, 418 (6th Cir. 2008) ("a one-time, exaggerated threat of harm made in a moment of anger does not rise to the level of a constitutional violation").  As such, the allegations in the instant case fail to support a substantive due process claim.

**B.      DPSCD's Liability for the Alleged Substantive Due Process Violation**

C.F. Doe seeks to hold DPSCD liable for Edwards' alleged constitutional violation under *Monell v. Department of Social Services of New York*, 436 U.S.

18

658 (1978).  To succeed on a *Monell* claim, the plaintiff must establish the

violation of a constitutional right and that the municipality is responsible for that

violation.  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).  The

Court's conclusion that Edwards did not violate C.F. Doe's substantive due process

rights mandates the dismissal of his *Monell* claim against DPSCD, as well.

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability

under *Monell* without an underlying constitutional violation.").

### C.    C.F. Doe's Remaining State Law Claims

C.F. Doe asserts gross negligence, assault, and intentional infliction of

emotional distress claims against Edwards, only, and a PWDCRA claim against

Edwards and DPSCD.  The Court has supplemental jurisdiction over these claims

under 28 U.S.C. § 1367.  In § 1367, Congress granted district courts the discretion

to exercise supplemental jurisdiction if *inter alia* all claims over which there is

original jurisdiction have been dismissed.  28 U.S.C. § 1367(c).  District courts

have "broad discretion in deciding whether to exercise supplemental jurisdiction

over state law claims.  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d

1244, 1254 (6th Cir. 1996).  This discretion is circumscribed, however, by

considerations of "judicial economy, convenience, fairness, and comity."  *Id.*

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "After a

Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing

supplemental claims." *Id*. at 1255 (citations omitted) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

The Court is declining to exercise supplemental jurisdiction over C.F. Doe's state law claims. No scheduling order has been issued, discovery has not begun, and the Court has yet to invest significant time or resources in the litigation besides addressing the pending Rule 12(c) motion. On the other hand, the interest of comity strongly counsels that C.F. Doe's state law claims proceed in state court.

## VI.   Conclusion

For the reasons set forth in this decision, C.F. Doe's § 1983 claims (Counts I and II) are subject to dismissal. The Court declines to exercise supplemental jurisdiction over the remaining claims in the Complaint (Counts III-VI). For that reason, the Court deems it inappropriate to address DPSCD's arguments for dismissal of those claims and is remanding this action to state court.

Accordingly,

     **IT IS ORDERED**, DPSCD's motion for judgment on the pleadings (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART** in that Counts I and II of the Complaint, only, are **DISMISSED WITH PREJUDICE**.

     **IT IS FURTHER ORDERED** that this action is **REMANDED** to the Circuit Court for Wayne County, Michigan.

     **IT IS SO ORDERED.**

s/ Linda V. Parker_____
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2022